IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL J. HASKINS,                )
  on behalf of himself and         )
  all others similarly             )
  situated,                        )
                                   )
            Plaintiff,             )
                                   )
      vs.                          )  Civil Action No. 09-754
                                   )
VIP WIRELESS LLC 300,              )
                                   )
            Defendant.             )
                                   )

**<u>MEMORANDUM OPINION</u>**

Pending before the Court is a motion by Defendant VIP Wireless LLC 300 ("VIP Wireless"), seeking a decision on the question of whether it is a "retail or service establishment" entitled to an exemption from the overtime provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA.") ("Motion," Doc. No. 44.) We conclude that Defendant does in fact qualify for this exemption and will therefore grant limited summary judgment to VIP Wireless on this issue. To the extent Defendant also seeks a ruling by the Court on the question of whether this case is suitable for collective treatment, that portion of the Motion is denied without prejudice.

The facts and procedural history of this case are set out

in the Court's earlier opinion at Doc. No. 23 and will not be reiterated here.

This Court has jurisdiction under 28 U.S.C. § 1331 as provided in the FLSA at 29 U.S.C. § 216(b).

A. **STANDARD FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Startzell v. City of Philadelphia, 533 F.3d 183, 192 (3d Cir. 2008), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). A "principal purpose[] of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . .and it should be interpreted in a way that allows it to accomplish this purpose." Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

In this case, as the moving party, VIP Wireless bears the initial burden of showing there is no genuine issue of material fact in dispute with regard to the issue under consideration by the Court. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986). Once Defendant satisfies

2

this burden, Plaintiff, as the nonmoving party, must "come forward with 'specific facts showing there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587, *quoting* Fed. R. Civ. P. 56(e). To avoid summary judgment, a plaintiff may not speculate or rest on the allegations in the pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999) (speculation and conclusory allegations do not satisfy the nonmovant's burden at this stage.)

In the past, the standard rule has been that in deciding a motion for summary judgment, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000), *quoting* Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994); Startzell, 533 F.3d at 192. However, the Supreme Court of the United States recently refined that standard, concluding that

> facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. . . .When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, the court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380 (2007).

3

That is, this Court must determine "the relevant set of facts and draw[] all inferences in favor of the nonmoving party *to the extent supportable by the record.*" Scott, id. at n.8 (emphasis in the original.)

**B. ANALYSIS**

VIP Wireless argues it can establish that it meets the criteria for what is referred to as the "retail or service establishment exemption" from the overtime provisions of the FLSA. If the Court agrees with that premise, the collective action aspect of this case must be dismissed because the second and third prongs of the retail or service establishment test require individualized consideration of each would-be plaintiff, thus making this matter inappropriate for treatment as a collective action. (Defendant's Brief in Support of Motion for Summary Judgment as to Asserted FLSA Collective Action, Doc. No. 47, "Def.'s Brief," at 1-2.)

Conversely, Plaintiff contends that the retail exemption as originally set forth in § 213(a)(2) of the FLSA has been repealed by Congress and is applicable only in the context of an exemption under § 207(i). (Plaintiff's Amended Response in Opposition to Defendant's Motion for Summary Judgment, Doc. No. 56, "Plf.'s Opp.," at 17.) Moreover, VIP Wireless is not, according to Plaintiff, a retail or service establishment within

the context of 28 U.S.C. § 207(i), but rather a telephone company, which is explicitly described as a business to which the retail exemption does not apply. (Id. at 17-18.) Finally, contrary to Defendant's argument that the second and third prongs of the retail establishment exemption test are not suitable for collective treatment, these issues are readily determined on a class basis. (Id. at 18-20.)

We begin our discussion with consideration of the exemption to the overtime regulations which VIP Wireless argues should be applied in this case.

1. The Retail or Service Establishment Exemption

When Congress established the Fair Labor Standards Act in 1938, one of its goals was to establish "a comprehensive scheme providing for minimum wages and overtime pay for workers 'engaged in' or 'in the production of goods for' interstate and foreign commerce." Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 192 (1966); see also Cruz v. Chesapeake Shipping, Inc., 932 F.2d 218, 226 (3d Cir. 1991) (Congress adopted the FLSA to protect workers from substandard wages and oppressive working hours.) Among other wage and salary provisions, the FLSA requires employers to pay their employees at least the standard minimum wage[1] and overtime wages at the rate of time and one-half

---

[1] Section 206 of the Act sets the minimum hourly wage for "employees engaged in commerce." 29 U.S.C. § 206(a). The federal minimum wage

that wage for hours in excess of 40 hours worked in a single week. 29 U.S.C. § 207(a)(1).

From the time the FLSA was enacted, however, Congress recognized that certain industries and certain types of employment environments should be exempt from these overtime requirements, provided other wage provisions were in place. One of these exemptions was the so-called "retail or service establishment" exemption, originally set out in 29 U.S.C. § 213(a)(2) of the Act. This section specifically defined a "retail or service establishment" as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 U.S.C. § 213(a)(2).

As Plaintiff points out, section 213(a)(2) of the FLSA was repealed in November 1989. When doing so, however, Congress specifically provided that where the phrase "retail or service establishment" was used in other provisions of the act, such as § 207(i), or in the Department of Labor ("DOL") regulations interpreting that phrase, the former definition was to be used. See 29 C.F.R. § 779.441 and Reich v. Delcorp, Inc., 3 F.3d 1181,

---

as of the date of this Memorandum Opinion is $7.25 per hour. A state may have a higher minimum wage, in which case the employee is entitled to the higher of the two wages. See the Department of Labor website at www.dol.gov/dol/topic/wages/minimumwage.htm, last visited September 28, 2010.

1183 (8th Cir. 1993) ("Absent specific congressional intent, we will not conclude that Congress retained the term 'retail or service establishment' in § 207(i) yet at the same time discarded thirty years of established meaning.")

Today, section 207(i) of the FLSA provides, in relevant part, that:

> No employer shall be deemed to have violated subsection (a)[2] by employing any employee at a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under [the minimum wage provisions of] section 6 and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i). Employment by retail or service establishment.

Although there is no current definition, *per se*, of the phrase "retail or service establishment" in the statute, the DOL regulations provide some guidance on this point. First, the regulations explain that *bona fide* retail or service establishments typically sell goods and services to the general public (as compared, for instance, to the wholesale market);

---

[2] "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

7

that the goods sold are intended to meet "everyday community needs;" that the establishment provides repair or "other services for the comfort and convenience" of the public "in the course of its daily living." In addition, the business plays no part in the manufacturing process and the goods or services sold are "at the end of the distribution stream." 29 C.F.R. § 779.318.[3] Second, the DOL provides two lists of specific establishments, the first giving examples of businesses "whose sales or service may be recognized as retail," such as household appliance stores, photographic supply and camera shops, and watch, clock and jewelry repair establishments. *See* 29 C.F.R. §779.320.[4] Conversely, the second list provides examples of

---

[3] In full, this regulation states: "(a) Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process. . . .Such an establishment sells to the general public its food and drink. It sells to such public its clothing and its furniture, its automobiles, its radios and refrigerators, its coal and its lumber, and other goods, and performs incidental services on such goods when necessary. It provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living. Illustrative of such establishments are: Grocery stores, hardware stores, clothing stores, coal dealers, furniture stores, restaurants, hotels, watch repair establishments, barber shops, and other such local establishments." 29 C.F.R. § 779.318.

[4] The rather antiquated list of retail establishments in this regulation also includes auto courts, automobile laundries, coal yards, dance halls, hosiery shops, millinery shops, public baths, scalp-treatment establishments, and shoeshine parlors, businesses seldom found in twenty-first century America.

businesses "to which the retail concept does not apply," such as accounting firms, brokers, building contractors, common carriers, insurance brokers and agents, doctors, dentists, pharmacists, and other medical providers, schools, telephone companies, and travel agencies. *See* 29 C.F.R. § 779.317;[5] *see also* Martin v. Refrigeration School, Inc., 968 F.2d 3, 7, n.2 (9th Cir. 1992), commenting that there appear to be "no generating principles" or "cohesive criteria" underlying the distinction between the businesses that are considered retail establishments as listed in § 779.320 and those which are not as listed in § 779.317.

2. Application of the Law to the Facts

As with all other exemptions from the overtime provisions of the FLSA, the retail or service establishment exemption must be narrowly construed. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). The burden of showing that the exemption applies is on the employer, who must provide evidence that the facts and circumstances "plainly and unmistakably" bring the employer within the terms of the exemption. Mitchell

---

[5] "There are types of establishments in industries where it is not readily apparent whether a retail concept exists and whether or not the exemption can apply. It, therefore, is not possible to give a complete list of the types of establishments that have no retail concept. It is possible, however, to give a partial list of establishments to which the retail concept does not apply." 29 C.F.R. § 779.317.

9

v. Kentucky Fin. Co., 359 U.S. 290, 295 (1959); Arnold, 361 U.S. at 392. Whether VIP Wireless falls within this exemption is a mixed question of law and fact to be resolved by the Court, keeping in mind at the point of summary judgment that inferences drawn in favor of the non-movant (Plaintiff) must have support in the record and must be reasonable. Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 900 (3d Cir. 1991); GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 210 (3d Cir. 2001). "[I]f the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden." Martin, 940 F.2d at 900, citing Idaho Sheet Metal Works, 383 U.S. at 206.

According to the allegations in Plaintiff's complaint, Mr. Haskins's primary job responsibility was as a sales representative. (Complaint, ¶¶ 11-12.) He describes VIP Wireless as an entity "which markets telecommunications equipment for various telecommunications companies such as Sprint and Nextel." (Id., ¶ 5.) He further alleges that VIP Wireless "sells cellular telephone and related equipment/ services as the agent of various phone service providers such as Sprint/Nextel and Boost." (Id. ¶ 13.) In his brief in opposition to the motion for summary judgment, however, he contends that by its own admissions, VIP Wireless "is

essentially a telephone company; the bulk of its business is selling service plans for telephone use." (Plf.'s Opp. at 7.) As a telephone company, Defendant is explicitly included in the list of businesses set out in Section 779.317 to which the overtime exemption does not apply. (Id. at 17-18.)

There is no question that "telephone companies" are among those businesses "to which the retail concept does not apply." See Schmidt v. Peoples Tel. Union, 138 F.2d 13, 16 (8th Cir. 1943) (The fact that switchboard operators of certain independently owned public telephone companies were specifically exempt from minimum wage and maximum hour requirements is strongly indicative that Congress did not regard a telephone company as being a retail or service establishment); New Mexico Public Service Co. v. Engel, 145 F.2d 636, 641 (10th Cir. 1944) (The term "retail or service establishment" is not to be interpreted in a "broad and loose sense" and "was not intended to include public utilities such as railroads, gas, electric, telephone and telegraph companies.") The question to be answered then, is whether VIP Wireless is a telephone company.

According to the affidavit of Edward Williams, President of VIP Wireless, Defendant is a Pennsylvania limited liability company whose "sole business purpose is to sell Sprint cellular phones, cellular service plans. . .and Sprint-branded cell-phone

accessories." (Appendix to Defendant's Motion for Summary Judgment, Doc. No. 46, Affidavit of Edward Williams, "Williams Aff.," ¶ 3.) VIP Wireless has entered into an authorized representative agreement with Sprint under which it is licensed as a "Preferred Retailer" to "facilitate and market the sales of cellular telephones and related equipment and telecommunication services on behalf of Sprint/Nextel." (Williams Aff., ¶ 6.) Attached to Mr. Williams's affidavit is a document entitled "ReadyNow/Preferred Retailer Certification Form" which sets out the requirements for a "Preferred Retailer" of Sprint products, such as storefront facilities, number of staff, services to be offered, employee training, store hours, and inventory. The document is to be signed by a "Sprint Representative" and by the "Dealer Representative." Defendant also provides a document entitled "Sprint Preferred Retailer Exclusive Program and Performance Requirements" for its "authorized representatives," an insurance certificate from the Hartford Insurance Company of the Midwest, reflecting that VIP Wireless is the insured and the premium is based on its classification as a "retail store," and an abbreviated statement of VIP Wireless's profit and loss for 2008. (*See* attachments to Williams Aff.)

These documents indicate that despite Plaintiff's argument that VIP Wireless is a telephone company, it is actually a

retail outlet for telecommunications goods and services. If VIP Wireless were part of the Sprint/Nextel telephone company,[6] it would not have needed an agreement identifying it as a preferred retailer or authorized representative, it would not be separately insured, and it would most likely not produce a profit and loss statement separate from that of Sprint/Nextel. The fact that Sprint maintains its own retail outlets (as compared to an authorized representative such as VIP Wireless) is reflected in such cases as Chial v. Sprint/United Mgmt. Co., 569 F.3d 850 (8th Cir. 2009) (plaintiff managed a chain of retail outlets reporting to an area retail director within the Sprint company); Rivera-Garcia v. Sprint PCS Caribe, CA No. 09-1813, 2010 U.S. Dist. LEXIS 71259 (D. P.R. July 14, 2010) (plaintiff was employed by Sprint, first as assistant store manager then store manager, and reported to Sprint's retail sales manager); Luedike v. Sprint Nextel Corp., CA No. 07-1082, 2010 U.S. Dist. LEXIS 3984 (S.D. Ind. Jan. 19, 2010) (putative class action

---

[6] One could argue that technically, Sprint/Nextel is not a "telephone company," but rather a "telecommunications carrier" as defined in the Telecommunications Act of 1996. See Iowa Telcoms Servs. v. Iowa Utils. Bd., 563 F.3d 743, 747 (8th Cir. 2009), discussing Sprint's business model with local cable and telephone companies to provide wholesale telecommunications services as a common carrier of interstate or foreign wire communications. Other cases classify Sprint as a telephone company, along with ALLTEL, Verizon, and Verizon's predecessors, GTE and Bell Atlantic. See USA Choice Internet Servs., LLC v. United States, 522 F.3d 1332, 1334-1335 (Fed. Cir. 2008). Neither party raises this argument and the Court need not do so in order to resolve the pending motion.

against employers identified as Sprint United Management Company and Nextel Retail Stores, LLC); Eng-Hatcher v. Sprint Nextel Corp., CA No. 07-7350, 2009 U.S. Dist. LEXIS 127262 (S.D. N.Y. Nov. 13, 2009) (noting that Sprint operates over 1200 stores throughout the United States); and Sibley v. Sprint Nextel Corp., CA No. 08-2063, 2009 U.S. Dist. LEXIS 20980 (D. Kan. Mar. 13, 2009) (approved collective action opt-in form was directed to individuals identified in Sprint's records as either currently or previously working for Sprint as "retail employees" who were "paid in whole or in part by commissions.") By contrast, Mr. Haskins at no time identifies himself as an employee of any entity other than VIP Wireless.

From the evidence submitted by Defendant, we conclude that although not referred to as such in the Preferred Retailer Certification Form, VIP Wireless was a type of "exclusive distributor," "authorized agent," or other form of contractor whose function was to solicit customers for Sprint and Nextel cell phones and service plans and to provide a retail outlet for those products. VIP Wireless did not manufacture the cell phones and related paraphernalia, did not devise the service plans, and did not provide the telecommunications services that the customer was buying. In short, VIP Wireless was an outlet

for Sprint/Nextel, a telecommunications or telephone company, but it was not itself such a company.

We also conclude that Defendant satisfies the other indicia of a retail or service establishment mentioned in the DOL regulations. *See* 29 C.F.R. § 779.318(a). Plaintiff agrees that VIP Wireless sells goods or services to the general public. (Plf.'s Opp. at 9, ¶¶ 19-20.) It is beyond question that in this day and age, cellular telephone service is an "everyday need" of the residents in communities where VIP Wireless is located. The goods and services sold by VIP Wireless are "at the very end of the stream of distribution" in that each customer most likely buys equipment and service plans only for himself, his family, or his business[7] rather than buying them with the intent of reselling them to others.

Finally, we find that VIP Wireless has established that 75% of its annual dollar volume of sales of goods, services, or both is not for resale and that it is recognized as providing retail sales or services in the particular industry. *See* 29 U.S.C. § 213(a)(2) (repealed.) Mr. Williams states in his affidavit that the company's gross profits for 2008 were just over $5,961,600 and, as shown in the company's profit and loss statement, more

---

[7] Even if VIP Wireless sold most of its Sprint/Nextel cell phones and service plans to businesses, it could still qualify as a retail or service establishment if its sales were not for resale and were recognized in the industry as retail. *See* Mitchell, 359 U.S. at 294.

than 75% of its annual dollar volume of sales that year resulted from the sale of cellular telephones, cellular service plans, and cell-phone accessories which were not for resale. (Williams Aff., ¶¶ 12, 14, 15.) Plaintiff admits the accuracy of this statement for purposes of deciding the pending Motion. (Plf.'s Opp. at 10, ¶ 23.) Mr. Williams also states that the company is licensed as a retail business by Sprint, its insurance coverage is premised on its recognition as a retail store, and that its business activities are recognized as retail sales and services in the cellular telephone industry. (Williams Aff., ¶¶ 6-8, 13.) Again, Plaintiff acknowledges the accuracy of these statements for purposes of the Motion. (Plf.'s Opp. at 8, ¶¶ 15-16 and at 10, ¶ 22.)

We conclude that VIP Wireless has established "plainly and unmistakably" that it is a retail or service establishment and not a telephone company. Thus, it satisfies the first prong of the commissioned employee exemption set out in Section 207(i).

### 3. The Section 207(i) Exemption and Collective Actions

The second part of Defendant's Motion for Summary Judgment pertains to the question of whether the overtime exemption for commissioned employees of a retail or service establishment is suitable for collective action. VIP Wireless argues that FLSA cases which involve highly individualized

defenses, such as those presented here, are not suitable for such treatment. Because the second and third prongs of the retail exemption set out in Section 207(i) require the Court to consider each opt-in plaintiff's minimum wage, hourly rate, and commissions paid, Defendant seeks dismissal with prejudice of the collective action aspects of this suit. (Def.'s Brief at 9-11.)

In his Complaint, Plaintiff fails to state an exact description of the class he seeks to represent. To the best of the Court's ability to discern his intentions, the class would consist of VIP Wireless non-supervisory, non-exempt employees who sold Sprint/Nextel and Boost cellular telephones, related equipment and service plans at Defendant's locations in the greater Pittsburgh area, the greater Philadelphia area, New Jersey, Atlanta, Georgia, and Miami, Florida (Complaint, ¶¶ 11-14), during some unstated period and who received commissions on sales but did not receive overtime pay for time worked in excess of 40 hours per week (id., ¶¶ 17, 19, 29-30.) Mr. Haskins alleges that there are at least 25 and perhaps as many as 100 employees who would be eligible to opt-in to the collective action. (Complaint, ¶¶ 16, 48.) However, no other potential plaintiffs are identified in either the Complaint or in the

Plaintiff's pleadings in opposition to the motion for summary judgment.

The Court concludes that the proposed class is described in terms so general and amorphous that it is impossible to determine if this case is suitable for treatment as a collective action or not. As set forth in the Order of Court attached hereto, when Plaintiff has moved for conditional certification of a class and the parties have completed discovery relative to those allegations pertaining to the putative class that can be established with some degree of precision, the Court will -- as is usual in this type of case -- entertain a motion from VIP Wireless for decertification which presumably will incorporate the arguments made in Defendant's pending motion.

An appropriate Order follows.

October 5, 2010

William L. Standish
United States District Judge